Satya P. KAUSHAL, et al., Plaintiffs,

v.

**STATE BANK OF INDIA, et
al., Defendants.**

No. 82 C 7414.

United States District Court,
N.D. Illinois, E.D.

Feb. 2, 1983.

As Amended March 1, 1983.

Joseph R. Marconi and Douglas K. Morrison, Marconi & Morrison, Chicago, Ill., for plaintiffs.

Gary L. Starkman, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendants State Bank of India and officers.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Satya Kaushal ("Kaushal"), Vinod Kaushal and Raja Enterprises, Inc. and its subsidiaries (collectively "Raja Companies") have sued the State Bank of India ("SBI"), several of its officers and employees and several other individual and corporate defendants for treble damages and injunctive relief under 18 U.S.C. § 1964(c) ("Private RICO" or, consistently with the manner in which all other sections of Title 18 are cited in this opinion, "Section 1964(c)").[1] Plaintiffs have also asserted pendent state law claims for damages and injunctive relief. SBI and its officers and employees[2] have moved to dismiss under Rule 12(b)(1).[3] For the reasons stated in this memorandum opinion and order, defendants' motion is granted in part and denied in part.

1. Plaintiffs' prayer for a temporary restraining order ("TRO") and a preliminary injunction caused this action to be heard initially on an expedited schedule, with the TRO being issued the same day the Complaint was filed (December 3, 1982). After a hearing a superseding TRO was issued December 6, and the parties agreed it would remain in force until this Court decided defendants' motion to dismiss. Dec. 6 TRO at 6 ¶ 3. That motion was filed before any defendant had been served, and defendants have specifically reserved their rights in connection with service of process. Motion 1 n. *. This opinion also does not address any personal jurisdiction questions. Defendants' current motion has not waived any other Fed.R.Civ.P. ("Rule") 12(b) defenses. See Rule 12(h)(1). All the parties' memoranda on the current motion were written at the end of 1982 and will be referred to without any year designation.

2. For ease in locution, moving defendants will be referred to simply as "defendants."

3. Defendants have inconsistently described (Dec. 8 Mem. 3) their motion as also brought under Rule 12(b)(6). But Rule 12(b)(1) and Rule 12(b)(6) motions are distinct. 5 Wright &

For a number of years before May 1981, SBI had an extensive business relationship with Patson Enterprises, Inc. and its affiliated corporations (collectively "Patson Companies"). During that time SBI officers N.G. Pallai ("Pallai") and Annada Kumar ("Kumar") had close business and personal relationships with Naren Soni ("Soni"), Patson Companies' principal shareholder.

By late 1979 or early 1980 SBI had more than $2 million in loans outstanding to Patson Companies. Pallai, Kumar and Soni knew (1) Patson Companies could not repay those loans to SBI, (2) Soni was personally liable to SBI on the loans and (3) SBI officials in Bombay would judge unfavorably the performance of Pallai and Kumar in making the loans to Patson Companies.

Pallai, Kumar and Soni conceived and executed a scheme to defraud plaintiffs by conducting and operating SBI and Patson Companies by a pattern of racketeering activities, including numerous uses of the United States mails in violation of Section 1341. Acting to benefit themselves, SBI and Patson Companies, they presented Kaushal with false financial statements

Miller, *Federal Practice and Procedure* § 1350, at 543 & n. 54 (1969). Nonetheless, the assumptions as to the Complaint's allegations invoked by a Rule 12(b)(6) motion are substantially the same as those under defendants' type of Rule 12(b)(1) motion. For purposes of their Rule 12(b)(1) motion defendants have assumed the truth of the Complaint's well-pleaded allegations. Dec. 8 Mem. 1 n. 2. Defendants thus challenge the pleading's sufficiency under Rule 8(a)(1), and the jurisdictional allegations will be taken as true for the purposes of this opinion. *See* 5 Wright & Miller § 1363. at 653; *id.* § 1350, at 549–54. *Cf. Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977) (describing construction of complaints on Rule 12(b)(6) motions); *Miles v. Armstrong,* 207 F.2d 284, 286 (7th Cir.1953) (finding immaterial the distinction between dismissal for lack of subject matter jurisdiction and dismissal for failure to state a claim, where district court found complaint's allegations insufficient to state federal cause of action).

4. This recitation implies no findings of fact. See the discussion in n. 3.

that intentionally overstated the assets and understated the liabilities of Patson Companies by more than $700,000. Thereby the three induced Kaushal to organize Raja Companies and through those companies, in May 1981, to purchase the assets and to assume the liabilities of Patson Companies (including the debt to SBI). With the participation of at least five other SBI employees,[5] the three also used the mails to induce Kaushal and his wife Vinod Kaushal to guarantee the Raja debts personally, securing the debts with their personal assets.

It was also part of the scheme that, as plaintiffs began discovering the fraud, SBI would seize by foreclosure the one solvent business in the Raja group, the Khyber India Restaurant (the "Restaurant") and sell it to Chatwal Hotels & Restaurants, Inc. ("Chatwal Corp.") and its principal, Sant Chatwal ("Chatwal"), an important SBI customer in New York. This aspect of the proposed scheme (not yet implemented) has been conducted by seven persons [6] and also involved numerous violations of Section 1341.

## Scope of Private RICO

Private RICO, part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Sections 1961–68, reads:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Section 1962 in turn specifies the activities prohibited under RICO. Private RICO thus creates a private right of action tied by its very terms to the proscription of certain criminal conduct.

As RICO's very name suggests, and as *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981) teaches, "the major purpose of [RICO] is to address the infiltration of legitimate business by organized crime." From this fact defendants argue (Dec. 8 Mem. 5–10) the present action falls outside the spirit (if not the letter) of RICO because there are no allegations defendants are in any way connected with organized crime.

Most courts have an understandable intuitive reaction that Private RICO was not intended—and should therefore not be construed—to sweep up the entire universe of common law fraud. Perhaps for that very reason, defendants' argument has met with some success in the courts. *See Bennett v. Berg,* 685 F.2d 1053, 1063 (8th Cir.1982) (citing cases), *rehearing en banc,* Jan. 12, 1983. But the weight of both judicial and scholarly authority is properly against employing such reasoning. *See id.* at 1063–64. In the criminal context our own Court of Appeals has held RICO does not require proof a defendant is connected with organized crime. *United States v. Aleman,* 609 F.2d 298, 303–04 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). It should also follow that a cause of action under Private RICO, predicated on violations of Section 1962, would lie though there is no allegation defendants are involved with organized crime or racketeers.

Although it too rejects that entirely unfounded limitation on Private RICO, this Court has expressed its own concern lest Section 1964(c) become a vehicle for asserting "garden variety fraud claims" in federal court. *Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 23 (N.D.Ill.1982); *see also Fields v. National Republic Bank of Chicago,* 546 F.Supp. 123, 124–25 (N.D.Ill. 1982); *Salisbury v. Chapman,* 527 F.Supp. 577, 579–81 & nn. 2–6 (N.D.Ill.1981). However, this Court has not permitted that con-

---

5. C. Gupta, B.S. Angle ("Angle"), Mrs. Deepa ("Deepa"), Mr. Sadasivan ("Sadasivan") and Mr. Sridhran ("Sridhran"). Complaint ¶ 19.

6. Sadasivan, Sridhran, B. Gupta, Chatwal, Mr. Padnaban ("Padnaban"), and Edward and Ronald Stackler (together "Stacklers"). Complaint

¶ 20. B. Gupta and Padnaban are also SBI officials. Stacklers, as owners of the beneficial interest in the real estate in which the Restaurant is located, are effectively lessors of the Restaurant to the Raja group.

cern to override reasoned statutory construction. Instead the analysis it has employed avoids both potential vices: (1) judicial emasculation of the broad language Congress actually used in RICO (*see Parnes,* 548 F.Supp. at 22–23) and (2) illegitimate transformation of common law fraud claims into federal claims by use of the RICO mold (*see Fields,* 546 F.Supp. at 124–25).

Section 1962 sets out three basic patterns of prohibited activities and a related conspiracy provision:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

Those patterns do sweep broadly, especially given the expansive definitions of "racketeering activity," "person," "enterprise" and "pattern of racketeering activity" in Sections 1961(1) and 1961(3)–(5) ("Section 1961"). Nevertheless it is against those patterns that Private RICO claims must be tested. Strict adherence to Congress' language will sustain only claims meeting Congress' own tests. Such an approach ("strict constructionism," if you will) both accepts the breadth of Congress' language and honors the limits of Congress' provision of a federal cause of action.

█ In other words, a defendant should face Private RICO liability only if alleged to have assimilated himself by his own conduct to the patterns of conduct Congress proscribed.[7] Plaintiffs' Complaint will be measured by that yardstick.

*Count I: Private RICO Damages*

█ Section 1964(c) grants a damages remedy to those injured "by reason of a violation of section 1962." It is only logical to couple such "violation" with the law *violator* under Section 1962: the "person" whose activity is labeled as "unlawful" in that section. *See Parnes,* 548 F.Supp. at 23–24.[8] Thus the proper question is whether the Complaint sufficiently alleges facts that, if true, would place defendants in violation of Section 1962.[9]

---

**7.** Courts mean much the same thing when they observe RICO targets criminal activity, not criminal status. *See, e.g., Bennett,* 685 F.2d at 1063; *Lode v. Leonardo,* 557 F.Supp. 675, 680 (N.D.Ill.1982) (Kocoras, J.).

**8.** This is the correct and unalloyed version of defendants' argument (Dec. 8 Mem. 10–15) for strict construction of Section 1964(c) as to the "source of the injury" sued upon. But defendants impermissibly weave into their argument (*id.*) their earlier contention RICO targets only organized criminal activity. That assertion is flatly wrong. *See Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 457 (7th Cir.), *cert.*

denied, —— U.S. ——, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).

**9.** Indictment under Section 1962 is certainly no prerequisite to a Section 1964(c) action. *See State Farm Fire and Casualty Ins. Co. v. Estate of Caton,* 540 F.Supp. 673, 676 (N.D.Ind.1982); *Farmers Bank of Delaware v. Bell Mortgage Corp.,* 452 F.Supp. 1278, 1280 (D.Del.1978). "Violation" of Section 1962 by a Private RICO defendant must be understood in a civil context: Allegations of the Private RICO complaint need show only a prima facie violation of Section 1962.

Plaintiffs have focused on Section 1962(c). That section's violation requires (*Parnes,* 548 F.Supp. at 23):

> (1) two parties, a "person" employed by or associated with an "enterprise"; and
>
> (2) participation by the "person" in the conduct of the "enterprise" via a "pattern of racketeering activity."

Certainly the Complaint's allegations are sufficient to place SBI, Pallai, Kumar and Soni in violation of Section 1962(c) or, in other words, to identify them as potentially liable Private RICO "persons." [10]

Complaint ¶ 17 alleges Soni, Pallai and Kumar, the latter two acting of course as SBI officers and for SBI's benefit (*id.* ¶ 18), conducted and operated Patson Companies, "enterprises" allegedly engaged in interstate commerce (*id.* ¶ 8), by a pattern of "racketeering activity" (numerous acts of mail fraud aimed at Kaushal). Thus those allegations have set out four RICO "persons," a RICO "enterprise," the character of their "association," [11] and the unlawful acts that are predicates for RICO liability. *See* Section 1961(1)(B) (including mail fraud in list of "racketeering activity") and Section 1961(5) (defining "pattern" as at least two acts of racketeering activity within a specified time frame).[12]

No allegations tie the other SBI officers to actual participation (direct or indirect) in the conduct of Patson Companies' affairs. Complaint ¶ 19 says C. Gupta, Angle, Deepa, Sadasivan and Sridhran participated in causing Kaushal and his wife to guarantee the Raja Companies' loans from SBI, but there is no indication this aspect of the alleged scheme involved Patson Companies at all. Similarly Complaint ¶ 20 says Sadasivan, Sridhran, B. Gupta and Padnaban participated in SBI's plan to reclaim the Restaurant, but here too no involvement with Patson Companies is indicated.

█ Moreover, there is no allegation those seven SBI officials conspired to conduct Patson Companies' affairs through racketeering activities, as contrasted with conspiring in the plans to obtain the loan guaranties and to reclaim the Restaurant. Thus Section 1962(d) is not available to connect those seven to the SBI-Pallai-Kumar-Soni violation of Section 1962(c).

That is not the end of the Private RICO story, however. It is surely conceptually possible for *two* RICO "enterprises" to have been involved here—not only Patson Companies but SBI itself. From the latter perspective, shifting SBI chameleon-like from "person" to "enterprise," the same analysis would involve those seven officers [13] as "persons" engaged in the "conduct of

---

**10.** Section 1961(3) specifies a "person" may be either an individual or a corporate entity. Because Soni has not joined in defendants' motion, his status as a RICO "person" is not relevant to the disposition of the motion. However, his alleged connection with certain of the moving defendants was such that his actions are also described below.

**11.** Defendants' Dec. 15 R.Mem. 3 implicitly concedes Complaint ¶ 17's sufficiency in alleging Soni, SBI, Pallai and Kumar conducted Patson Companies' affairs. *See United States v. Mandel,* 591 F.2d 1347, 1375 (4th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). Plaintiffs correctly note (Dec. 14 Mem. 5 n. 5) the Complaint also sufficiently alleges Soni and SBI conspired in violation of Section 1962(d), but that additional Section 1962 violation is unnecessary to the result here as to Soni and SBI.

**12.** There is no merit to defendants' contentions (Dec. 8 Mem. 15–23) the Complaint inadequately alleges a mail fraud scheme, the relevant mailings, the RICO cast of characters or the character of the fraud. All are plain on the face of the Complaint. Additionally it is impermissible bootstrapping to argue the bank exculpation clause in the assumption agreement (*id.* at 17–18) undermines the Complaint's allegations of fraud (essentially fraud in the inducement of the agreement itself). Finally the fact the letters already produced as examples of mailings were written after Patson Companies' cessation of business (Def.Dec. 15 R.Mem. 4) does not defeat the sufficiency of the allegations of Complaint ¶¶ 17, 19–20.

**13.** After identifying Mr. Sharma ("Sharma") in the case caption, preface and Paragraph 11, plaintiffs make no allegations of any kind as to his conduct.

[*SBI*'s] affairs through a pattern of racketeering activity . . .": obtaining the loan guaranties and planning reclamation of the Restaurant through Section 1341 violations.

Accordingly Count I stands not only against the SBI-Pallai-Kumar-Soni group but against the seven SBI officers as well.[14] Only Sharma among the SBI cast of characters is dismissed.

### Count II: Private Equitable Relief under RICO

■ Complaint Count II seeks to block SBI's sale of the Restaurant and to divest defendants of any interest they have acquired in the Restaurant. That prayer for broad equitable relief under RICO forces consideration of the threshold question whether Section 1964 makes equitable remedies available to Private RICO plaintiffs. In turn that "difficult question" [15] involves complex issues of statutory construction and legislative intent that, so far as this Court is aware, have not been fully explored by any court.[16]

Section 1964 provides (although quoted earlier, Private RICO is repeated for ease of comparison and analysis):

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings under this section. In any action brought by the United States under this section, the court shall proceed as soon as practicable to the hearing and determination thereof. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

(d) A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under this chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.

---

**14.** Of course, Count I also presently stands as to all other named defendants not joining in defendants' motion.

**15.** *Bennett*, 685 F.2d at 1064, posed the question but found it unnecessary to provide an answer under the circumstances. In much the same vein, just last month the Court of Appeals for the Fourth Circuit stated serious doubts as to the availability of injunctive relief to the private RICO plaintiff, again without the need to decide the issue. *Dan River, Inc. v. Icahn*, 701 F.2d 278, 1983 Fed.Sec.L.Rep. (CCH) ¶ 99,043, at 94,963–64 (4th Cir. 1983). In addition at least three other courts have simply assumed private injunctive relief might be available under RICO without discussing the complex questions addressed below. *See Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*, 518 F.Supp. 993, 1014 (S.D.Tex.1981); *United States v. Barber*, 476 F.Supp. 182, 189 (S.D.W.Va.1979) (dictum); *United States v. Mandel*, 415 F.Supp. 997, 1021 (D.Md.1976) (dictum).

**16.** What is more distressing is that the academic community, blessed with more time for reflection and extended treatment than the judiciary, has not served us well. As the discussion below will reflect, some authors that purport to deal with the problem have substituted unsupported conclusory statements (and perhaps wishful thought) for reasoned analysis.

No clear indication is given by the statute itself as to how the express grant of a private damages remedy in Private RICO is related to the broad grant of courts' equitable "jurisdiction" in Section 1964(a).

Two commentators have asserted the use of "and [shall]" (instead of "to") before the treble-damages recovery clause in Private RICO implies the private damages remedy is *in addition* to other equitable remedies. Blakey and Gettings, *Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts—Criminal and Civil Remedies,* 53 Temple L.Q. 1009, 1038 & n. 133 (1980) ("*Basic Concepts*").[17] This Court finds that reading bizarre and wholly unconvincing as a matter of plain English and the normal use of language.[18] Moreover, even were the word "and" so unexpectedly pregnant with meaning (as it is not), the commentators' argument would not explain why the

"implied" equitable remedies would encompass those listed in Section 1964(a), including divestiture. Section 1964(a) by its terms confers "jurisdiction" on the federal courts but speaks neither of a "cause of action" nor of "relief." As *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) teaches, those concepts are distinct, and confirmation of court jurisdiction does not in itself indicate who may invoke the court's power or what remedies are available to him.[19]

Section 1964(c) certainly *in terms* grants only a private treble-damages remedy. True, it does not expressly say "only" the damages remedy is granted,[20] and Section 1964(a) does not say "only" the government may seek its illustrative equitable remedies. *See* Strafer, Massumi and Skolnick, *Civil RICO in the Public Interest: "Everybody's Darling,"* 19 Amer.Crim.L.Rev. 655, 710

---

**17.** Professor G. Robert Blakey was chief counsel to the Senate subcommittee that spawned RICO and has been referred to as RICO's principal draftsman (as the text discussion below indicates, no private remedy at all was contained in the Senate version; the treble damages provision was added by the House). If there were hard evidence to support the claim of private equitable remedies, he should be expected to be able to adduce it. Yet *Basic Concepts* at 1038 n. 132 directs readers to 3 Cornell Institute on Organized Crime, *Materials on RICO* 1332–76 (1980–81) "[f]or an analysis of private actions for injunctive relief under RICO." That citation is to Carolyn Mills' article, *RICO and Injunctions.* But that article (1) does not specifically discuss the availability of injunctive relief to a *private* RICO plaintiff, (2) simply asserts (*id.* at 1339–40, 1372–76) such injunctive relief is available to "a plaintiff" under RICO without focusing on any possible difference in status between the public and private plaintiff, (3) analogizes RICO to the injunctive remedy provided the *United States* under the National Prohibition Act (*id.* at 1344–50), (4) compares RICO injunctive relief to such relief as has been obtained in *government* antitrust actions (*id.* at 1351–70), and (5) identifies only two equitable RICO actions, both involving the *United States* as plaintiff (*id.* at 1370–72). Ms. Mills refers to RICO only as having "provided statutory authority for the *government's* right to injunctive relief" (*id.* at 1342, emphasis added). Obviously the Blakey and Gettings reference to "an analysis of private actions for injunctive relief" is entirely misleading. Unfortunately the positive assertion of such a proposition in the course of a scholarly

dissertation, coupled with citation of a source not too readily available, is the stuff of which self-fulfilling (but false) prophecies are born. See *Bennett,* 685 F.2d at 1064. *Basic Concepts* at 1047 n. 197 does refer to a portion of Private RICO's legislative history and to a student article discussing the topic. *Bennett* did not give specific currency to that footnote, but all the issues posed by the cited materials are discussed in this opinion.

**18.** See also n. 22.

**19.** *Davis,* 442 U.S. at 239–40 n. 18, 99 S.Ct. at 2273–74 n. 18 put the matter thus (citations omitted, emphasis in original):

> Thus it may be said that *jurisdiction* is a question of whether a federal court has the power, under the Constitution or laws of the United States, to hear a case . . .; *standing* is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction . . .; *cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and *relief* is a question of the various remedies a federal court may make available.

**20.** Even so, the inclusion of a single statutory reference to private plaintiffs, and the identification of a single remedy for such plaintiffs in that very section, logically carries the negative implication no *other* remedy was intended to be conferred.

(1982) ("*Public Interest*"). But the fair reading of the statute is its literal one— that Section 1964(b) defines who "may institute proceedings under this section [1964]": the *Attorney General.* At most the statute is arguably ambiguous.

To the extent the statute may be viewed as ambiguous, this Court must turn to the legislative history to divine legislative intent. In this instance, as in many others, the legislative history is not precise. On the whole, however, that history strongly indicates Congress did not intend to grant private RICO plaintiffs equitable remedies in addition to the legal remedy provided in Section 1964(c). That conclusion is compelled if this Court follows, as it must, applicable Supreme Court guidelines.

RICO began as a Senate bill, S.30, 91st Cong., 1st Sess. (1969). As reported by the Senate Judiciary Committee S.30 § 1964 did not contain a private right of action provision at all, and the committee report therefore discussed only civil RICO actions by the United States. S.Rep. No. 617, 91st Cong. 1st Sess. 24, 34, 80–83, 160 (1969).[21] Some nine months later, when S.30 was reported as amended by the House Judiciary Committee, a private treble damages remedy had been added to its Section 1964. H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 4007, 4010, 4034. Thus the private damages remedy was engrafted onto a statutory scheme that had been complete on its own terms (with Section 1964(a) conferring jurisdiction and Section 1964(b) defining who could invoke it).

Two inferences may logically be drawn from the legislative history (both the statutory structure and the committee reports):

   1. Section 1964(c) is quite independent of Section 1964(a).

**21.** In all other respects S.30 § 1964 was substantially identical to Section 1964 as enacted. *See* S.Rep. No. 617 at 24.

**22.** 15 U.S.C. § 15, the private antitrust damages remedy provided by the Clayton Act § 4, contains the same "and shall recover" formulation that the authors of *Basic Concepts* suggest

   2. Section 1964(a)'s provisions spell out the governmental equitable remedies available under Section 1964(b), not the private remedy available under Section 1964(c).

Additionally persuasive is the fact the House Committee's description of S.30 § 1964(a) follows almost verbatim the Senate Committee's description of that subsection (without the slightest hint of any expansion of coverage to parallel the newly-added private damages remedy). *Compare* H.R.Rep. No. 1549, *reprinted in* 1970 U.S. Code Cong. & Ad.News at 4034, *with* S.Rep. No. 617 at 160. The House's repetition of the language that "the list [of remedies] is not exhaustive," first expressed by the Senate when only the government could sue at all, belies the effort by *Basic Concepts* at 1038 n. 132 to find in that language the implication of private equitable remedies. Plainly the House Committee's addition of the private damages remedy had not altered the public-action thrust of the other subsections of S.30 § 1964.

Moreover the Senate Committee Report emphasizes the analogy of Section 1964 to the antitrust laws. S.Rep. No. 617 at 81–82. That general analogy was clearly behind much of Congress' thinking in enacting the civil RICO provisions. *See Basic Concepts* at 1040–43; *Public Interest* at 688–89, 712. But by sharp contrast with Section 1964, the antitrust laws specifically and in terms provide a separate private equity action *in addition to* a private treble damages remedy. 15 U.S.C. §§ 15 and 26.[22] Had it so desired, Congress could have completed the analogy of Private RICO to the antitrust laws by including a private equitable relief remedy. It did not do so, contrary to the expressed wishes of certain Congressmen, *see Public Interest* at 712 nn. 388–89, and despite the fact earlier "RICO" proposals had included such private equitable remedies, *id.* at 712–13 & nn. 393, 395.

implies equitable relief is also available as a matter of plain reading. Presumably those authors would regard Congress' contemporaneous enactment of 15 U.S.C. § 26, Clayton Act § 16, as redundant—or perhaps as an example of poor draftsmanship!

At least two other courts have expressed strong doubts Section 1964(c) grants private plaintiffs an injunctive remedy. *Dan River* (cited at n. 15); *Ashland Oil, Inc. v. Gleave,* 540 F.Supp. 81, 85 (W.D.N.Y.1982). One district court has entered a preliminary injunction in an action brought in part under RICO, *USACO Coal Co. v. Carbomin Energy, Inc.,* 539 F.Supp. 807, 814–16 (W.D.Ky. 1982), but the court did not at all address the question discussed in this opinion. Indeed, in affirming the district court the Court of Appeals for the Sixth Circuit linked the preliminary injunction solely to plaintiffs' rights to reach defendants' property under the complaint's *state* law claim. As the Court of Appeals specifically stated, 689 F.2d 94, 97 (6th Cir.1982):

> The injunction was not issued in order to secure a RICO treble damages award
> . . . .

*USACO* surely does not aid plaintiffs here (in fact it suggests Section 1964(c) does not authorize creative equitable relief for Private RICO plaintiffs).

In a forthcoming article Professor Blakey (co-author of *Basic Concepts* ) returns to his study of Private RICO and asserts (*The RICO Civil Fraud Action in Context: Reflections on "Bennett v. Berg",* [58] Notre Dame L.Rev. [237], [329] ):

> It is difficult to see how a court could conclude that RICO does not provide equitable relief for private parties. . . . Section 1964 ought to be read as authorizing both governmental and private suits to obtain equitable relief. To the degree that any ambiguity might be thought to exist in the choice of language, the liberal construction clause and the remedial purpose of the statute come down on the side of finding private suits to be authorized and that full relief can be granted. No satisfactory rationale can be offered, in short, to explain why a court ought to feel itself circumscribed in doing full justice for a victim under RICO.

But what is apparently invisible to the academic eye is readily discernible by this Court's: For better or worse, current Supreme Court doctrine sharply limits the implication of rights of action or remedies where Congress has not provided them. As Professor Blakey quietly admits, the issue here is really one of finding a congressional implication where there is no explicit congressional declaration—and the Supreme Court's guidelines for directing *that* judicial enterprise provide a mandate, not only a "satisfactory rationale," for not vivifying Professor Blakey's theories.

In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979) the Supreme Court said:

> [I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.

*Accord, Touche Ross & Co. v. Redington,* 442 U.S. 560, 571–74, 99 S.Ct. 2479, 2486–88, 61 L.Ed.2d 82 (1979). In reaffirming the same principle in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623–24, 69 L.Ed.2d 435 (1981), the Supreme Court taught a court may read additional judicial remedies into "elaborate [statutory] enforcement provisions" only where "strong indicia of a contrary congressional intent" negate the implication "Congress provided precisely the remedies it considered appropriate."

In the case of Private RICO there are no "strong indicia"—in the structure of Section 1964, in its legislative history, in the absence of explicit language of exclusivity in subsection (c), or in any combination of those elements—of Congress' intent to infer private equitable remedies under RICO. In fact the evidence points precisely in the opposite direction. *See Sea Clammers,* 453 U.S. at 17–18, 101 S.Ct. at 2624–25. Contrast the circumstance in *Herman & MacLean v. Huddleston,* —— U.S. ——, —— ——, 103 S.Ct. 683, 686–92, 74 L.Ed.2d 548 (1983), where the Supreme Court found indications of a specific congressional intent to cumulate remedies available under federal securities laws. Count II must be dismissed.

### Count III: State Law Damages

■ Count III advances a state law fraud claim for compensatory and punitive damages. Under *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) this Court has the constitutional power to hear nonfederal claims between federal action parties so long as both federal and nonfederal claims arise from a "common nucleus of operative fact." Actual exercise of that power, however, is a matter of this Court's discretion. *Id.* at 726, 86 S.Ct. at 1139.

■ Here the state law fraud claims clearly derive from the same "nucleus of operative fact" that gives rise to plaintiffs' RICO damages claims. Moreover the factors involved in the exercise of this Court's discretion—judicial economy, convenience and considerations of fairness to litigants (*id.*)—all point toward allowing the state fraud claims to be asserted pendent to plaintiffs' Private RICO damages claims.

### Count IV: State Law Injunctive Relief

■ Complaint Count IV's prayer for relief repeats the prayer for RICO injunctive relief under Count II. Yet plaintiffs have identified no state law authority for ordering divestiture of SBI's security interest in the Restaurant. Indeed Count IV on the whole (¶ 21) seems aimed at *future* action by SBI: possible sale of the Restaurant.

**23.** *Cf.* 5 Wright & Miller § 1350 at 552:
Thus, if the pleader avers jurisdiction generally, but allegations in later portions of the complaint negate its existence, the court should dismiss the action.
Though this opinion is limited to considering the sufficiency of the Complaint's allegations, there is external evidence to support the conclusion legal remedies are entirely adequate. In his December 3, 1982 Affidavit Kaushal states (¶ 13):
Affiant has been attempting to negotiate the sale of the restaurant to a number of potential purchasers, one of whom was informed by defendant Edward Stackler not to continue negotiations with affiant because the State Bank of India was going to sell the assets of the restaurant to defendant Chatwal on Saturday, December 4, 1982.
Kaushal goes on to state (*id.* ¶ 14) (1) Sadasivan told him SBI would not conduct the sale as

■ On the latter score, plaintiffs simply assert (*id.*), without any supporting facts, "no adequate remedy at law exists" for their possible loss of the Restaurant. To the contrary, the Complaint itself confirms damages is an adequate remedy.[23] Although possible availability of legal remedies may not bar the granting of divestiture or other equitable remedies to the United States under Section 1964(a), *United States v. Cappetto,* 502 F.2d 1351, 1358–59 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975), that does not extend to the state equitable claims. Consequently, on both the divestiture prayer and the prayer for state law injunctive relief, Count IV as pleaded is insufficient.

### Conclusion

In summary:

1. Counts I and III are dismissed as to defendant Sharma, but stand as to all other named defendants.

2. Counts II and IV are dismissed in their entirety.

By its terms the December 6, 1982 TRO has remained in effect as to SBI pending issuance of this opinion. Because this Court has concluded Section 1964(c) does not provide private RICO plaintiffs equitable remedies, the TRO will be treated as having expired at 5 p.m. today.[24] Moving defendants are ordered to answer the Complaint on or before February 22, 1983.

long as Kaushal negotiated only with Chatwal and (2) Chatwal has demanded a $156,000 payment from Kaushal as a condition of Chatwal's purchase. Those assertions are apparently meant to show how SBI's actions are preventing Kaushal from obtaining the market price for the Restaurant, but the assertions also (1) concede Kaushal's willingness to sell the Restaurant and (2) imply there is a market price at which Kaushal could be fully compensated for the Restaurant.

**24.** In light of the Complaint's survival only as a damages action, this Court is uncertain whether defendants intend to persist in their request for certification of the jurisdictional issue to the Court of Appeals (Dec. 29 Mem. 11–14). In any case, this Court will hold the question in abeyance pending early proceedings by other defendants in this action.