John E. VOLCKMANN, et al.,
Plaintiffs,

v.

Gordon EDWARDS, et al., Defendants.

No. C–85–4209 WHO.

United States District Court,
N.D. California.

April 9, 1986.

Thomas W. Latham, Dominic J. Campisi, Evans, Latham and Campisi, Jamie O. Harris, San Francisco, Cal., for plaintiffs.

Boake Christensen, Kathryn N. Oliver, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., Timothy A. Duffy, Hughes & Luce, Dallas, Tex., Stephen R. Jaffe, San Francisco, Cal., Gordon Edwards, Malcolm E. McLorg, Green & McLorg, Sausalito, Cal., Duane C. Musfelt, Sharon S. Chandler, Lewis, D'Amato, Brisbois & Bisgaard, Paul R. Haerle, Steven F. Brockhage, Thelen, Marrin, Johnson & Bridges, Philip B. Bass, Alvin L. Fishman, Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, Tony J. Tanke, Jon S. Heim, San Francisco, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

This securities fraud case is currently before the Court on various defendants' motions to dismiss and to strike portions of the third amended complaint. Most of the issues have been disposed of orally; all that remains are the motions to dismiss the counts under the Racketeer Influenced and Corrupt Organizations Act (RICO). Specifically, defendants contend that the complaint fails to plead a sufficient "pattern of racketeering activity" and that rescission is unavailable as a remedy under RICO. For the reasons set forth below, the motions to dismiss the RICO counts are denied and the motions to strike the prayer for rescission under RICO are granted.

### I

This case involves alleged misrepresentations and material omissions in connection with the sale of oil and gas limited partnership interests. Plaintiffs, who are fifteen individuals, two husband-and-wife couples, one set of trustees, and one limited partnership, purchased shares in two limited partnerships called Exco-II and Exco-III. Ten plaintiffs paid a total of $1,350,000 for units in Exco-II and seventeen plaintiffs paid a total of $2,100,000 for units in Exco-III, for a grand total of $3,450,000 for units in Exco-II and Exco-III.

Defendants are three individuals, three corporations, two general partnerships, two limited partnerships, and one national banking association. Plaintiffs charge all defendants with violations of § 10(b) of the Securities Exchange Act of 1934, but charge only some defendants with violations of RICO, 18 U.S.C. § 1961, *et seq.* The defendants charged with RICO violations are Gordon Edwards, the promoter of the partnerships; the "Marshall defendants" (Marshall Exploration, Inc., Quinton Carlile, and Marshall Exploration, Inc., as a venturer in Marshall II and Marshall III–81), who contracted with the Exco partnerships for the purpose of acquiring, drilling, and operating oil and gas wells; and Seattle-First National Bank ("Sea-First"), which purchased the loans that financed the purchases of partnership interests, and which refinanced the obligations. Each of the RICO defendants is charged with violating §§ 1962(a), (b), and (c) by virtue of violating 18 U.S.C. §§ 1341 (mail fraud), and 1343 (wire fraud), and the federal securities laws. Plaintiffs pray for treble damages, rescission, a declaration of nonliability, attorney's fees, and costs.

In order to determine whether a "pattern of racketeering" is sufficiently pleaded, it is first necessary to examine the alleged facts that plaintiffs say constitute predicate offenses under RICO. Plaintiffs generally allege that they were induced to purchase partnership interests by misrepresentations contained in both the Exco-II and Exco-III offering materials, and by Gordon Edwards' oral misrepresentations. Plaintiffs allege that Edwards and the offering materials also failed to disclose facts that would have played a material role in plaintiffs' decisions whether to purchase the interests. Specifically, plaintiffs allege that Edwards and the offering materials made the following affirmative misrepresentations, *inter alia,* that:

1. Plaintiffs could anticipate revenues from the partnerships such that no further funds would have to be advanced by the limited partners for the payment of interest or principal.

2. Edwards' previous oil and gas drilling ventures had been or were likely to be successful.

3. The Exco drilling ventures were low risk and that plaintiffs could not lose money.

4. Edwards had superior experience, skill, and knowledge in evaluating and choosing suitable drilling sites, and that he would closely supervise the drilling operations.

5. Edwards would hire independent geological consultants and "other specialists" to assist in selecting suitable drilling sites.

6. One of Edwards' previous ventures, the Calpetco V program, had estimated fu-

ture net revenues of $125,000,000, despite the fact that Edwards possessed a report prepared in accordance with Securities and Exchange Commission rules that estimated future net revenues at only $25,325,939.

In addition to these affirmative misrepresentations by Edwards and the Exco offering materials, plaintiffs allege that Edwards, the offering materials, and the Marshall defendants all failed to disclose various material facts. The facts that Edwards and the offering materials supposedly failed to disclose are too numerous to be listed here. The Marshall defendants, despite the ostensible existence of a fiduciary relationship to plaintiffs, failed to disclose the above-enumerated misrepresentations by Edwards and the offering materials. The Marshall defendants also allegedly failed to disclose the fact that their compensation arrangement with the partnerships was structured in such a way that gave the Marshall defendants strong incentive to complete drilling at every site, whether the site was likely to yield substantial oil and gas or not.

The only remaining allegation against Sea-First is that in January 1983, the bank directed Edwards to send a memorandum to the limited partners.[1] The memorandum, dated January 24, 1983, allegedly induced the investors to refinance their loan obligations with Sea-First under more onerous terms than those in the original indebtedness agreements. Specifically, Sea-First and Edwards failed to disclose in the memorandum that the new agreements gave Sea-First one-half percent more interest than under the previous agreements. The memorandum also allegedly failed to disclose the fact that the new agreements would give the bank a security interest in the partnership shares, whereas no such security existed under the previous agreements.

## II

Defendants contend that these allegations fail to establish a "pattern of rack-

eteering" under RICO because the alleged racketeering acts are so intimately related amongst themselves that they constitute a single course of conduct. In other words, defendants argue that the "pattern of racketeering" element of RICO requires a certain "unconnectedness" among acts before they qualify as predicate offenses. Because the Ninth Circuit has not yet passed on this interpretation of "pattern," and because this area of the law is presently in a state of considerable uncertainty, this Court deems it necessary to examine defendants' contention at some length.

### A

Section 1961(1) states in pertinent part:

racketeering activity" means * * * (B) any act which is indictable under any of the following provisions of title 18, United States Code: * * * section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) * * * [or] (D) * * * fraud in the sale of securities * * *.

Section 1961(5) states:

"pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

This language suggests no limitation similar to that which defendants urge: a requirement that the predicate acts occur in separate courses of criminal conduct, or in separate criminal episodes.

Indeed, until recently, there was a nearly unbroken line of case authority expressly rejecting any such requirement of "separateness" or "unconnectedness" among predicate acts. In *United States v. Weatherspoon*, 581 F.2d 595 (7th Cir.1978), the defendant owned a beauty school. She was convicted of knowingly causing false stu-

---

[1]. Plaintiffs previously had alleged that Sea-First was liable as an aider and abettor for misrepresentations in the Exco-III offering materials.

The Court dismissed that allegation orally at the hearing on January 20, 1985.

dent enrollment cards and attendance certificates to be mailed to the Veterans Administration in furtherance of a scheme to defraud the agency. The defendant argued that the individual mailings could not be considered as individual predicate offenses for RICO purposes because they were all in furtherance of a single fraudulent scheme. The court found the argument to be foreclosed by the "plain language" of § 1961(1)(B). As long as an act is "indictable" under any of the sections listed in § 1961(1)(B), the court held, it can be used in piecing together a pattern of racketeering activity. *Id.* at 601–02.

Three years later, in *United States v. Starnes*, 644 F.2d 673 (1981), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981), the Seventh Circuit reaffirmed its holding in *Weatherspoon*. In *Starnes*, the defendants committed arson with intent to defraud an insurer, in violation of Illinois law. In affirming the defendants' RICO convictions, the Court of Appeals held that each of the acts involved in the single scheme to defraud constituted a separate predicate offense under RICO. Traveling across state lines with the intent to commit arson in violation of 18 U.S.C. § 1952(a), actually setting the fire, and using the mails to complete the fraud each counted as an act of racketeering activity. *Id.* at 678. "[T]he fact that there is but one objective underlying the separate acts," the court wrote, "does not diminish the applicability of RICO to those acts." *Id.*

The rule of *Weatherspoon* and *Starnes* has been followed by many other courts. *See United States v. Watchmaker*, 761 F.2d 1459, 1475 (11th Cir.1985), *reh'g denied*, 766 F.2d 1493, *cert. denied, Harrell v. United States*, —— U.S. ——, 106 S.Ct. 879, 88 L.Ed.2d 917 (1986) (virtually simultaneous shootings of three police officers were three separate predicate acts); *United States v. Gambale*, 610 F.Supp. 1515, 1548–49 (D.Mass.1985) (two instances of obstruction of justice, though part of a single criminal episode, were separate predicate acts); *Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061, 1066 (S.D.N.Y. 1983) (acts of mail and wire fraud "arising

out of common nucleus of facts" were separate predicate acts); *Harper v. New Japan Securities International, Inc.*, 545 F.Supp. 1002, 1004 (C.D.Cal.1982) ("[e]ach act of criminal activity is counted as an act of racketeering activity, even if numerous acts arise out of the same episode"); *United States v. Chovanec*, 467 F.Supp. 41, 44 (S.D.N.Y.1979) (proposed requirement that acts arise out of separate criminal episodes "not only contrary to the plain language of the statute, but ... might render it unconstitutional"); *United States v. Salvitti*, 451 F.Supp. 195, 200 (E.D.Pa.1978) *aff'd* 588 F.2d 822 and 824 (3d Cir.1978) (series of mailings in furtherance of single scheme to obtain bribe established pattern). The only case adopting an apparently contrary rule was *Teleprompter of Erie, Inc. v. City of Erie*, 537 F.Supp. 6 (W.D.Pa.1981) (multiple bribes to secure single cable television franchise constituted single act of racketeering). In short, the vast majority of courts agreed that no "separateness" or "unconnectedness" requirement existed under RICO.

### B

In July 1985, however, this line of authority was thrown into question by the Supreme Court's decision in *Sedima, S.P. R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). At least three district courts have held that *Sedima* mandates an acceptance of the "separateness" requirement proffered by the defendants in the case at bar and rejected by the above-listed cases. *See Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831–33 (N.D.Ill.1985); *Professional Assets Management, Inc. v. Penn Square Bank, N.A.*, 616 F.Supp. 1418, 1420–21 (W.D.Okla.1985); *Allington v. Carpenter*, 619 F.Supp. 474, 477–78 (C.D. Cal.1985). While acknowledging that previous cases rejected such a requirement, the *Northern Trust* court opined that *Sedima* "clearly creates a whole new ballgame." 615 F.Supp. at 833.

It is thus worth examining *Sedima* in some detail. In an attempt to limit the girth of civil RICO, a divided panel of the Second Circuit had held that in order for a civil RICO plaintiff to recover, he must prove two things: (1) that he suffered a "racketeering-type injury" above and beyond any loss stemming from the predicate offenses; and (2) that the defendant was criminally convicted of the predicate offenses. *Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482, 494–96 and 503 (2d Cir.1984). The Supreme Court granted *certiorari* limited to the review of these two requirements. After considerable examination of RICO's legislative history, the Court rejected the Second Circuit's requirements of "racketeering-type injury" and prior criminal convictions. —— U.S. at ——, 105 S.Ct. at 3283–87. Although the Court empathized with the Second Circuit's concern about the explosion of civil RICO litigation, it found that the panel's requirements neither "effectively responds to these problems" nor "is a form of statutory amendment appropriately undertaken by the courts." —— U.S. at ——, 105 S.Ct. at 3287.

In the course of rejecting the "racketeering injury" and prior conviction requirements, the Court pointed out that one of the main reasons for the sprawl of civil RICO is "the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" —— U.S. at ——, 105 S.Ct. at 3286. At footnote 14, the Court thought it appropriate to suggest a "meaningful concept of pattern," supported by the legislative history:

> "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). * * * "[t]he term 'pattern' itself requires the showing of a relationship * * *. So, therefore, proof of two acts of racketeering activity, without more, does not establish a

pattern * * *." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). * * Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e).

This language may be useful in interpreting other sections of the Act.

—— U.S. at ——, n. 14, 105 S.Ct. at 3283–87, n. 14.

In this footnote, the Court ascertains a limit on the scope of "pattern of racketeering activity." This limit requires a certain relatedness, or "continuity," among predicate acts. In other words, under footnote 14, acts of racketeering may not be counted as separate predicate acts unless they have the same or similar "purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." It must be noted that this requirement of "continuity" among acts is very different from the requirement advanced by the defendants in the case at bar and adopted by the *Northern Trust* court. Under *Northern Trust,* for acts to be counted as predicate offenses within a pattern of racketeering, the acts must be at least somewhat *separate* from one another—they cannot be components of the same criminal scheme or episode. The footnote 14 requirement of continuity and the *Northern Trust* requirement of separateness thus represent opposite ends of a continuum.

That the footnote 14 and *Northern Trust* requirements are opposites does not, of course, necessarily mean they are mutually exclusive or inconsistent. Indeed, the American Bar Association's (ABA) Ad Hoc Civil RICO Task Force has recommended that Congress amend the statute to include both requirements. *See Report of the Ad Hoc Civil RICO Task Force of the ABA Section of Corporation, Banking and*

*Business Law* 208 (1985) (hereinafter cited as "Task Force Report"). The difference between the two requirements, however, does raise the critical question of whether *Sedima* really authorized lower courts to disregard the long line of authority that had conclusively rejected the "separateness" requirement. Put another way, if *Sedima* only deals with the "continuity" requirement, is it fair to say that the decision by implication vitiates all prior holdings dealing with the "separateness" requirement?

This Court cannot agree with the latter proposition. If the Supreme Court had meant to obliterate the entire *Weatherspoon* line of cases, surely it would have either mentioned them or at least discussed the "separateness" requirement. The *Sedima* opinion does neither. It is true that *Sedima* admonishes "Congress and the courts to develop a meaningful concept of 'pattern.'" — U.S. at ——, 105 S.Ct. at 3286. That admonition, however, alludes to the suggestion in footnote 14 concerning the continuity requirement, which itself establishes a meaningful concept of pattern. It does not say anything with regard to the *other* end of the continuum—the "separateness" requirement. In the absence of any such reference, it must be presumed that the Court did not mean to overturn the *Weatherspoon* line of authority.

There is another reason that leads this Court to believe that *Weatherspoon* and its progeny are still good law. Neither the ABA Civil RICO Task Force report nor *Northern Trust* and its progeny offer a speck of legislative history to support the "separateness" requirement. *Northern Trust, Professional Assets Management,* and *Allington,* each quote the legislative history in footnote 14 of *Sedima.* But, as noted above, that legislative history supports only the recognition of the *continuity* requirement, not the *separateness* requirement. They are distinct requirements, and support for one does not necessarily support the other.

Significantly, it appears to have been this solicitous concern for legislative history,

Congressional intent, and separation of powers that led the Supreme Court in *Sedima* to reject, however regretfully, the Second Circuit's "racketeering injury" and prior conviction limitations on civil RICO:

> It is true that private civil actions under the statute are being brought almost solely against [respected businesses], rather than against the archetypal, intimidating mobster. Yet this defect—if defect it is—is inherent in the statute as written, *and its correction must lie with Congress.* * * *
>
> * * * We do not believe that the amorphous standing requirement imposed by the Second Circuit * * * is a form of statutory amendment appropriately undertaken by the courts.

— U.S. at ———-——, 105 S.Ct. 3286–88 (emphasis added).

Similarly, this Court, however regretfully, must decline to adopt the *Northern Trust* requirement of "separateness." This Court is alarmed by the proliferation of civil RICO litigation, not only in sheer volume, but in direction. As noted by the Task Force Report, forty percent of known civil RICO cases involved securities fraud, and thirty-seven percent involved common-law fraud in a commercial or business setting. Only nine percent of known civil RICO cases involved allegations of criminal activity "of a type generally associated with professional criminals." Task Force Report at 55–56. The adoption of a "separateness" requirement within the phrase "pattern of racketeering activity" might well be an effective method of curtailing the sprawl of civil RICO. But the creation of such a requirement, absent explicit support in the legislative history, constitutes a form of statutory amendment reserved for Congress.

### III

■ Having held that *Sedima* requires "continuity" among predicate acts but not "separateness," the Court must now rule on defendants' motions to dismiss the RICO counts in the case at bar. The relevant question is whether, assuming the

truth of the allegations in the complaint, the RICO defendants could have been indicted for more than one predicate offense. This case involves multiple plaintiffs. Viewed from a criminal procedure perspective, the case involves multiple victims. It is well established that even though there may be a common thread of fraud among the sales, courts have consistently held that each sale of a security may constitute a separate offense. *See United States v. Naftalin,* 606 F.2d 809, 810 (8th Cir.1979). Moreover, each separate use of the mails in the execution of a scheme to defraud constitutes a separate offense of mail fraud, which is also pled as a predicate offense in this case. *See Sanders v. United States,* 415 F.2d 621, 626 (5th Cir.), *cert. denied,* 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1969).

Again assuming the truth of the factual allegations in the complaint, it appears that each of the RICO defendants could have been indicted for affirmative misrepresentations or failures to disclose material facts in connection with more than one sale of securities. There were at least ten sales of Exco-II units and at least seventeen sales of Exco-III units. Gordon Edwards and Exco Enterprises, Inc., could have been indicted in connection with each of these twenty-seven sales. The Marshall defendants, who allegedly failed to disclose material misrepresentations in the Exco-II and Exco-III offering materials, could also have been indicted in connection with each of the twenty-seven sales.[2] Assuming (as the Court must on a motion to dismiss) that the assumption agreements were new securities, there were at least sixteen sales in connection with which Sea-First could have been indicted. Doubtless each of the RICO defendants could also have been indicted on multiple counts of mail fraud.

In no way does the instant ruling comment on the strength or weakness of plaintiffs' case. Rather, the Court merely holds that under the rule of *United States v.*

*Weatherspoon,* a pattern of racketeering has been properly pled because, assuming the truth of the complaint's allegations, each RICO defendant theoretically could have been indicted on more than one count of mail or securities fraud. Accordingly, the motions to dismiss count five of the third amended complaint are denied.

## IV

All that remains to be decided is whether rescission is available to a private litigant under RICO. The court in *DeMent v. Abbott Capital Corp.,* 589 F.Supp. 1378, 1384–85 (N.D.Ill.1984) held that rescission was available to a private litigant where such rescission amounted to nothing more than a return of out-of-pocket losses—damages, in essence. Such is not the case here. As defendants point out, the sales and financing agreements here were relatively complex, multi-party transactions. The limited partners not only entered into limited partnership agreements, but many of them entered into original financing agreements with a now-defunct bank, Penn Square, and assumption agreements with Sea-First. In this case, rescission truly would require the "unraveling" of a complex set of transactions. *DeMent,* is therefore inapposite.

Where rescission would require more than a simple return of out-of-pocket loss, as in this case, this Court is persuaded by the scholarly opinions of Judge Shadur in *Kaushal v. State Bank of India,* 556 F.Supp. 576, 581–84 (N.D.Ill.1983) and *Car Carriers, Inc. v. Ford Motor Co.,* 583 F.Supp. 221, 227 (N.D.Ill.1984). In *Kaushal,* Judge Shadur undertook a careful examination of the legislative history of § 1964(c) and concluded that "the history strongly indicates Congress did not intend to grant private RICO plaintiffs equitable remedies in addition to the legal remedy provided in Section 1964(c)." 556 F.Supp. at 583. Although only the question of injunctive relief was before the court in

---

**2.** Doubtless the Marshall defendants would argue that they could not have been indicted for a mere failure to disclose information, but the

authority is to the contrary. *See United States v. Koenig,* 388 F.Supp. 670, 712 (S.D.N.Y.1974).

*Kaushal,* Judge Shadur indicated that the same rationale should apply to equitable rescission. *Car Carriers, supra,* 583 F.Supp. at 227.

### V

For the foregoing reasons,

IT IS HEREBY ORDERED that:

1. The motions to dismiss count five of the third amended complaint are denied.

2. The motions to strike the prayer for recission are granted.