The CITY OF CHICAGO HEIGHTS, ILLINOIS, Plaintiff,

v.

Nick LOBUE, individually, Nick Lobue d/b/a A.A. Arken Chemical Company, John Gliottoni, Jr., Charles Panici, Ralph Galderio, Donald Prisco, Ernest Molyneux, Louise Marshall, Gene Wuest d/b/a Able and Willing Plumbing, Donald Gipple, Martin Wondaal, Charles Fitzpatrick, and Gulf Coast Laboratories, Inc., Defendants.

No. 92 C 7410.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 31, 1996.

Lawrence Jay Weiner, Justino D. Petrarca, Scariano, Kula, Ellch & Himes, Chtd., Chicago, IL, David P. Kula, Anthony Gael Scariano, Raymond A. Hauser, Scariano, Kula, Ellch & Himes, Chtd., Chicago Heights, IL, for City of Chicago Heights, Illinois.

Michael D. Monico, Monico, Pavich & Spevack, Chicago, IL, for Nick Lobue.

Peter Andrew Regulski, Onesto, Giglio, Meltreger & Associates, Chicago, IL, for John Gliottoni.

Allan A. Ackerman, Allan A. Ackerman, P.C., Chicago, IL, Adam J. Brenner, Chicago, IL, for Charles Panici.

Raymond G. Wigell, Steven A. Brenner, Raymond G. Wigell, Ltd., Olympia Fields, IL, for Ralph Galderio.

Walter Jones, Jr., Jorge V. Cazares, Pugh, Jones & Johnson, P.C., Chicago, IL, for Louise Marshall.

Louise Marshall, Carswell Federal Medical Center, Fort Worth, TX, pro se.

John Scott Arthur, Olympia Fields, IL, for Gene Wuest.

Philip C. Parenti, Law Office of Philip C. Parenti, Chicago, IL, for Donald Gipple.

Thomas Day Decker, Thomas D. Decker & Associates, Ltd., Chicago, IL, Thomas J. Murphy, John F. Fennig, Thomas J. Murphy, P.C., Chicago, IL, for Martin Wondaal.

Robert S. Kramer, Elgin, IL, for Charles Fitzpatrick.

## MEMORANDUM OPINION AND ORDER

### RELEVANT FACTS [1]

CASTILLO, District Judge.

During the years 1976 to 1991, Nick Lobue devised many a scheme to profit from the City of Chicago Heights. He began as a contractor, charging the City during 1976–1979 for quantities of a water treatment chemical that he never delivered. On twelve occasions between 1976 and 1979, Lobue billed the City for 35,000 pounds of the chemical but only delivered 24,000 pounds. The price during that period was fifty cents or more per pound. (*See* Pl.Facts, Ex. B, C.) After becoming a City council member in 1979, he continued the overbilling scam in concert with the supplier of the chemical, taking kickbacks generated by the overbilling. On eighteen occasions between 1979 and 1984, the City was billed by the supplier for 35,000 pounds when only 24,000 were delivered, and on at least seventeen of these occasions, Lobue received kickbacks of $6,000.00 from the supplier. It is undisputed that the price paid by the City was intended to cover the cost of the kickbacks.

In another scheme, Lobue arranged for a particular plumbing company to receive a City contract to replace water meters in exchange for $80,000.00 in kickbacks. Once again, the money for the kickbacks was generated by overbilling the City by that amount.

Martin Wondaal was a participant in two other schemes, paying bribes and kickbacks in connection with two City contracts, the 1980–83 garbage hauling contract, and a 1981 landfill operation contract. Wondaal paid Lobue and others [2] approximately $100,000.00 for the garbage hauling contract, and at least $50,000.00 during the course of the landfill operation, which terminated in 1986. Lobue also solicited and received bribes and kickbacks on various other City business, including a cable television contract, the 1983 garbage hauling contract, a contract to pick up bulk waste, a water pipeline contract, an HMO contract, and a 4:00 a.m. liquor license for a bar. Lobue's total "take" from all of these various entrepreneurial activities was at least $161,860.00.

Following a criminal trial against former Chicago Heights officials and various City contractors under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*,[3] the City of Chicago Heights brought this private RICO suit for damages against several of the same people. Now pending before the Court is the City's motion for summary judgment against Nick Lobue, and its motion for partial summary judgment as to damages against Martin Wondaal. We previously granted summary

---

1. Unless otherwise noted, these facts are drawn from the Plaintiff's Statements of Material Facts ("Pl.Facts") submitted in conjunction with the City's two motions for summary judgment, and are uncontested.

2. Many of the bribes and kickbacks received by Lobue were shared with three or four of his fellow corrupt officials.

3. *See United States v. Panici,* No. 92 CR 0213 (N.D.Ill.1990), *aff'd,* 75 F.3d 1097 (7th Cir.1996).

judgment against Martin Wondaal as to liability under RICO for bribery and kickbacks related to garbage hauling and landfill operation contracts, *see City of Chicago Heights v. Lobue,* 1995 WL 290389 (N.D.Ill. May 10, 1995). For the reasons given below, we grant summary judgment against defendant Lobue as to liability and also as to certain theories of damages advanced by the City, but deny summary judgment as to the City's other damages theories. We also deny the City's motion for summary judgment against Wondaal on damages.

## LEGAL STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmovant must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial" in order to withstand a motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." *Collins v. American Optometric Ass'n,* 693 F.2d 636, 639 (7th Cir.1982). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## ANALYSIS

In Lobue's response to the City's motion for summary judgment against him, he states that he does not contest liability under RICO. Likewise, he makes no response to the City's statement of material facts submitted pursuant to Local General Rule 12(m), thus admitting all of those facts under subsection (n) of that rule. *See Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir.

1994). Because we find that there is no genuine issue of material fact as to Lobue's liability, we grant summary judgment in favor of the City as to Lobue's liability under 18 U.S.C. § 1962. The remaining issue is whether summary judgment is appropriate on the damages aspects of the City's separate claims against Lobue and Wondaal.

### Damages Recoverable from Lobue

The City seeks to recover damages from Lobue that fall into two broad categories: the recovery of direct financial loss sustained by the City; and the divestment and transfer to the City of Lobue's "ill-gotten gains." The City claims that both types of damages are recoverable under the RICO civil remedies provision, 18 U.S.C. § 1964, and that both should be trebled under that section.

■ There is little doubt that the first category of damages, direct financial losses, may be recovered by the City under the provisions of § 1964. Section 1964(c), which governs the remedies available to private plaintiffs in civil RICO suits, *see DeMent v. Abbott Capital Corp.,* 589 F.Supp. 1378, 1384 (N.D.Ill.1984), provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). The measure of civil RICO damages (before trebling) is the harm flowing from the predicate acts. *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1310 (7th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). Thus, any direct financial injury to the City's business or property caused by Lobue's extortion, receipt of bribes and kickbacks, and official misconduct is recoverable threefold.

■ The City seeks compensation for the overbilling caused by Lobue's receipt of kickbacks in connection with the water treatment chemical invoices and the contract for water meter replacement. There is no dispute that the amount of overbilling directly attributable to kickbacks on the water meter replacement contract totalled $80,000.00. As

for the water treatment chemical invoices, the City notes that Lobue made payments ranging from $700.00 to $1000.00 to each of three people, on twelve occasions between 1976 and 1979. The City therefore estimates that the overbilling for this period came to $30,600.00 ($850.00—the average of $700.00 and $1,000.00—times three times twelve). Lobue protests that the City has no basis on which to simply take $850.00 as the average payoff, and that it should use $700.00 instead as the payoff figure.

We find that there is a simpler way to calculate the City's losses for this period, relying solely on uncontested and known figures. Between 1976 and 1979, the charge to the City for the water treatment chemical was never less than fifty cents per pound. *See* Pl.Facts, Ex. B, C. It is undisputed that the City was charged for 35,000 pounds when only 24,000 pounds were delivered, on twelve separate occasions between 1976 and 1979, an overcharge of $5,500.00 each time (11,000 pounds times fifty cents per pound). The total amount of overbilling for these twelve invoices is thus properly $66,000.00, not the lower figures estimated by the parties based on Lobue's known payoffs.

The amount of overbilling accomplished on another eighteen occasions between 1979 and 1984, after Lobue became a City council member, is not disputed: Lobue received $6,000.00 on at least the last seventeen of those occasions. Thus, the extra charges paid by the City during this period was at least $102,000.00. The grand total of the known overbilling is $248,000.00, all of which was unnecessarily paid by the City due to Lobue's misconduct. Trebling this figure, we find that the City is entitled to recover $744,-000.00 from Lobue as direct financial loss under § 1964(c).

 With some reluctance, we conclude that the City is not able to recover from Lobue on its other, "disgorgement" theory of damages. The City does not contest that § 1964(c) outlines the only civil remedies available to private plaintiffs under RICO. That section makes no reference to the transfer of ill-gotten gains or disgorgement. The City argues that this legislative silence ought to be interpreted to allow such reme-

dies, however, because it is inequitable to allow Lobue to keep the profits of his misdeeds. The City notes that not all equitable remedies are beyond the reach of private civil RICO plaintiffs, citing *DeMent v. Abbott Capital Corp.,* 589 F.Supp. 1378, 1384 (N.D.Ill.1984), which allowed the plaintiffs the equitable remedy of restitution.

The City's arguments do not address the more fundamental problem, however: regardless of whether it is characterized as legal or equitable, the recovery permitted by courts interpreting § 1964(c) is strictly compensatory in nature—it focuses only on the losses incurred by the private plaintiff. *DeMent* is no exception. The court there expressly held that the equitable remedy of restitution would be allowed solely in order to compensate the plaintiff for "out of pocket losses." *See id.* at 1384 (also noting that restitution was obtainable at law even before the merger of law and equity). This focus on the plaintiff's losses is compelled by the language of the statute, which provides that a person who has sustained economic damages "shall recover threefold *the damages he sustains.*" 18 U.S.C. § 1964(c) (emphasis added).

 Nowhere in the statute or the case law can the City identify support for the approach it wishes to take, which focuses instead on the *gain to the wrongdoer* and the inequities of allowing him to keep his ill-gotten profits. Congress clearly was aware of the possibility of taking this approach, because it allowed the United States to seek the disgorgement and forfeiture of wrongfully acquired "profits or other proceeds" as a penalty in criminal RICO prosecutions. *See, e.g.,* 18 U.S.C. § 1963(a)(3) (1995); *United States v. A Parcel of Land, Buildings, Appurtenances and Improvements, Known As 92 Buena Vista Avenue, Rumson, New Jersey,* 507 U.S. 111, 121 & n. 16, 113 S.Ct. 1126, 1133–34 & n. 16, 122 L.Ed.2d 469 (1993). There is no indication anywhere that Congress contemplated extending this remedy to private plaintiffs in civil suits, however. Instead, as noted above, the civil remedies sec-

tion applicable to private RICO plaintiffs allows only the recovery of economic losses.[4]

By same token, Lobue cannot be heard to argue that he should only pay that portion of the City's actual financial losses which he kept. Once again, the focus must be on the loss to the City caused by Lobue's illegal activities, not on his share of the profits derived from those activities. Just as the City cannot recover Lobue's illicit profits under RICO, Lobue cannot limit the amount of his liability to those profits.[5] Lobue participated in (or created) the schemes to overbill the City in order to line his own pockets, and he remains jointly and severally liable for all the damage the City sustained from such overbilling. *United States v. Masters*, 924 F.2d 1362, 1369–70 (7th Cir.), *cert. denied*, 500 U.S. 919, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991) (joint and several liability under RICO).

■ Lobue next argues that he should not have to pay the full amount (or any amount) of the City's trebled direct losses caused by him because the amount already collected by the City in this and other lawsuits against former officials and contractors should be set off against the amount of damages he is liable for here. As noted above, in order to withstand a motion for summary judgment the nonmovant must "make a showing sufficient to establish the existence of [the] element[s] . . . on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552. Lobue would bear the burden of establishing the right to set-off at trial. As he has not satisfied the elements he would have to show

at trial to establish a right of set-off, he has failed to preserve this issue for trial.

Lobue has presented no evidence that any of the money collected by the City from other defendants or in other actions represents damages for the specific losses for which the City seeks recovery here. Nor has he demonstrated that the total amount of the City's losses has been determined, so that its overall recovery from all parties would be limited to that amount. Lobue states only that the City has recovered money from others.[6] Standing alone, that single fact cannot establish a right of set-off. Because he has not met his burden to establish the existence of a right to set-off, we grant summary judgment in favor of the City in the amount of $744,000.00.

*Damages Recoverable from Wondaal*

The City's motion for summary judgment against Wondaal on damages seeks the same two types of damages as discussed above: recompense for direct financial losses, and the disgorgement of ill-gotten gains. For the reasons already discussed, we hold that the remedy of disgorgement is not available to the City. Even if it were, the City's calculations of those gains is mistaken, as it is based on the total amounts of the contracts. The "proceeds" which may be forfeited under RICO are net profits, not gross revenues. *Masters*, 924 F.2d at 1369–70. The City has not demonstrated what Wondaal's profits from his illicitly-acquired contracts were, and thus we could not award these damages on a motion for summary judgment.

---

**4.** In *County of Cook v. Lynch*, 560 F.Supp. 136 (N.D.Ill.1982), a municipal body brought suit under civil RICO for misconduct by its former officials. The court allowed the county to enforce a constructive trust over the illicit proceeds of the corruption, but only on state common law theories. *Id.* at 140–41. The plaintiff here has not brought suit on such state law theories, although perhaps it could still choose to do so.

**5.** As we have held that the City may not recover Lobue's illgotten gains, we need not discuss Lobue's many arguments against such a recovery.

**6.** To the extent that Lobue argues that the City has recovered on bonds issued upon its former officials, such bonds are the equivalent of insurance and therefore no set-off is proper under the

collateral source rule. *See generally Stifle v. Marathon Petroleum Co.*, 876 F.2d 552, 560 (7th Cir.1989) (the collateral source rule prohibits money received from a collateral source from being used to set off a judgment in tort action); *Perry v. Larson*, 794 F.2d 279, 285–86 (7th Cir. 1986) (noting that the collateral source rule generally applies in federal civil rights actions). We have found no case addressing the application of the collateral source rule to RICO damages, but we believe that the same reasoning would apply. In addition, we note that the terms of the City's settlement with the bond issuer (Ex. A to Lobue's response brief) require the City to reimburse the issuer up to the first $100,000 of any recovery from Lobue or his associates.

■ The City also comes up short in its attempt to show that it has sustained direct financial losses that were caused by Wondaal's misconduct in paying bribes and kickbacks in order to obtain the trash hauling and landfill contracts. As losses, the City cites the bad press it received as a locus of crooked dealing and corrupt officials, and an unspecified amount of royalties due under the landfill contract that have not yet been paid by Wondaal. Neither of these are the type of direct losses that are recoverable under RICO.

■ Personal injury, such as injury to reputation, generally is not an injury to "business or property" that is compensable under § 1964(c). *See Rodriguez v. Quinones,* 813 F.Supp. 924, 928–29 (D.P.R.1993) (collecting cases). The case cited by the City, *Lerman v. Joyce International, Inc.,* 10 F.3d 106 (3d Cir.1993), is not to the contrary. There, the reviewing court took into consideration the fact that the defendant's misconduct had imperiled the plaintiff's business reputation and exposed it to possible legal liability in affirming the district court's award of damages. The damages at issue were, however, strictly economic losses—the value of inventory that the defendant had sold off the books in order to raise money to pay bribes. There was no recovery for the injury to reputation itself in *Lerman.* Accordingly, *Lerman* does not weigh against our holding that reputational injuries are not recoverable under RICO.

■ We are left with the underpayment of landfill royalties as the only direct financial loss that the City can identify as having been caused by Wondaal. The problem is that this loss, while it is undeniably an economic loss, was not proximately caused by Wondaal's violations of RICO. As noted above, the measure of civil RICO damages (before trebling) is the harm flowing from the predicate acts. *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1310 (7th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). Here, the predicate acts for which liability has been established are bribes and kickbacks paid by Wondaal to obtain and keep the trash hauling and landfill contracts. The City simply has not shown that this misconduct caused Wondaal's failure to keep up with his royalty payments to the City. Instead, Wondaal's underpayment appears to be a simple breach of contract. RICO allows treble damages, but only if damages which reasonably flow from the underlying predicate acts. The City has not shown any such tie between Wondaal's faulty payment record and his RICO violations.

We do not rule out the possibility that the City could demonstrate at trial that the shortfall in timely royalty payments (alleged to be $99,321.96) was caused by, or in some other way related to, the bribes and kickbacks which Wondaal paid. Alternately, perhaps it can show that the underpayment was itself part of a RICO scheme, or demonstrate other form of direct losses.[7] At trial, the City will also be free to attempt to prove Wondaal's liability for acts beyond those on which we granted summary judgment. As of now, however, the City has not adequately shown the tie between any RICO violation and any direct economic loss. Accordingly, we deny the City's motion for summary judgment against Wondaal on damages.

### CONCLUSION

For the foregoing reasons, we grant the City's motion for summary judgment against defendant Nick Lobue [180–1] in the amount of $744,000.00. We deny the City's motion for summary judgment against Martin Wondaal on damages.

What remains of this litigation is a relatively brief trial against defendant Martin Wondaal, which will primarily focus on the remaining damage issues. This trial should be fairly straightforward. A final pretrial order consistent with this Order will be due on February 29, 1996. A status hearing will be held on February 9, 1996 for the purpose of setting this matter for trial.

---

7. *See, e.g., County of Cook v. Lynch,* 620 F.Supp. 1256, 1258 (N.D.Ill.1985) (salary of corrupt public officials may be recoverable under RICO).