**FRANKFORD TRUST CO., t/a Frankford Bank, et al., Plaintiffs,**

v.

**ADVEST, INC., et al., Defendants.**

**BURG FUNERAL HOME, INC., et al., Plaintiffs,**

v.

**ADVEST, INC., et al., Defendants.**

**Civil Action No. 93–329.**

United States District Court, E.D. Pennsylvania.

Sept. 3, 1996.

**532**

William H. Ewing, Stephanie Philips Berg- man, Connolly, Epstein, Chicco, Foxman, En- gelmyer and Ewing, Philadelphia, PA, for defendants.

James G. Wiles, Kelly A. Childers, Ells- worth, Wiles and Chalphin, P.C., Philadel- phia, PA, for plaintiffs.

### ORDER

EDUARDO C. ROBRENO, District Judge.

**AND NOW,** this 30th day of August, 1996, upon the Court's consideration of the **RE- PORT AND RECOMMENDATION** of United States Magistrate Judge Thomas J. Rueter on Defendant's Motion for Summary Judgment, dated August 12, 1996, Advest's objections thereto (doc. no. 318), and plain- tiffs' responses thereto, and following a hear- ing with counsel for the parties on August 27, 1996, the **REPORT AND RECOMMENDA- TION** is **ADOPTED.** Defendant's motion for summary judgment (doc. no. 274) is **DE- NIED.**

**AND IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION

RUETER, United States Magistrate Judge.

Presently before this court is defendant Advest's Inc. motion for summary judgment on plaintiff's claims set forth in counts one, two and three of its complaint, alleging viola- tions of the Racketeer Influenced and Cor- rupt Organizations Act ("RICO"), 18 U.S.C. § 1962. The motion raises one question: Are lost profits or expectancy damages re- coverable under RICO? Because this court concludes that they are, defendant's motion should be denied.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Burg Funeral Home, Inc. ("Burg") is a funeral home in Red Lion, Pennsylvania. Frankford Trust Company ("Frankford") is a Pennsylvania trust company headquartered in Horsham, Pennsylvania. Burg offers cus- tomers the option to enter into a contract ("pre-need contract") whereby the customer agrees to make payments during his lifetime in exchange for Burg's promise to provide funeral services upon the death of the cus- tomer ("pre-need customer").

In April of 1988, Burg and Frankford en- tered into a Funeral Home Trust Adminis- tration Agreement ("Trust Agreement") which related to the management, adminis- tration and investment of the funds of Burg's pre-need customers. Frankford invested some of the funds with Advest, Inc. ("Ad- vest"), a securities broker dealer and a whol- ly owned subsidiary of Advest Group, Inc. Burg alleges that James M. Coyne, Jr., the

account executive in charge of the Burg pre-need funds at Advest, committed fraud and acted negligently in the management of the pre-need funds of Burg and other funeral homes.

In its complaint filed on July 26, 1993 (C.A. No. 93–4000) Burg alleges that Coyne and Advest used the United States mail to send to Frankford false brokers' confirmations showing fictitious purchases and sales of securities, which purportedly showed that the purchases of securities were appropriate fiduciary investments for the Burg Trust. In fact, the complaint charges that Coyne and Advest purchased speculative and high risk stocks, bonds and options, which were not appropriate trust investments. As a result, Burg suffered losses on its investment. Furthermore, the plaintiff alleges that Coyne and Advest engaged in churning[1] of Burg's trading accounts resulting in Burg paying unnecessary and excessive brokerage commissions. Finally, Burg avers that because of Coyne's and Advest's excessive use of margin trading[2], Burg paid unnecessary and exorbitant margin interest to Advest.

Advest claims that during the course of its relationship with Burg, a total of $2,585,850 was deposited by Burg with Frankford and Advest. (See Spewock's Aff., Ex. B of Advest's Mem. of Law in support of Mot. for Summ. J., Doc. No. 274). Advest contends that Burg actually received $2,682,535.40 from Advest, and therefore argues that Burg suffered no injury and in fact gained $96,-685.40. Hence, Advest claims that Burg cannot proceed with its RICO claim because it has not sustained any injury to its business or property.

## II. DISCUSSION

### A. Damages under RICO

The civil RICO provision, 18 U.S.C. § 1964(c) allows "[a]ny person injured in his business or property" by reason of a violation of section 1962 of RICO to sue, and, if successful, to recover treble damages and attorney fees. In *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), the Supreme Court examined identical language from the Clayton Act, 15 U.S.C. § 15, on which the RICO statute was patterned. *See Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir.1987) (noting that the RICO Act is patterned after the Clayton Act). The Supreme Court in *Reiter* stated: "When a commercial enterprise suffers a loss of money it suffers an injury in both its 'business' and its 'property.'" 442 U.S. at 339, 99 S.Ct. at 2331.

 It is undisputed that Burg is a commercial enterprise. The record also establishes that Burg needed to earn income from the money deposited by the pre-need customers in order to provide the services under its pre-need contracts. For example, if a customer, age 40, gave Burg $5,000 in 1990 for a funeral which may occur at his death at age 75 in the year 2025, Burg would need to ensure that his money would grow at least at the rate of inflation in order to provide the funeral as promised. Indeed, in order to realize a profit, Burg would have to realize a reasonable return on its money. Thus, if Burg is able to prove in its allegations that Advest defrauded it through a pattern of racketeering and these acts diminished the income that it should have received on its money, then it will have established an injury to its "business" and "property." *See Reiter*, 442 U.S. at 339, 99 S.Ct. at 2331. The vast majority of cases that have addressed this issue concur with the above reasoning and have ruled that lost profits, or expectancy damages[3] are recoverable under RICO, subject to proof of proximate causation and that

---

1. "Churning occurs when a securities broker buys and sells securities without regard to the customer's investment objectives, in order to generate commissions." *Angelastro v. Prudential–Bache Securities*, 764 F.2d 939, 943 n. 6 (3d Cir.), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

2. When purchasing securities on margin, a customer pays a minimum amount, and the remaining balance of the purchase is loaned to the customer by the broker. *See Drasner v. Thomson McKinnon Securities*, 433 F.Supp. 485, 491 (S.D.N.Y.1977).

3. In its memo in opposition to the defendant's motion for summary judgment, the plaintiff alleges that its RICO damages can be calculated in either one of two ways. First, the recoverable damages would equal the sum of the brokers'

the damages are not speculative. *See e.g., Three Crown Ltd. Partnership v. Salomon Bros.*, 906 F.Supp. 876 (S.D.N.Y.1995); *AAMCO Transmissions v. Marino*, 1992 WL 38120 (E.D.Pa.1992) (Waldman, J.); *Advanced Business Sys. v. Philips Info. Sys. Co.*, 750 F.Supp. 774 (E.D.La.1990); *Sound Video Unlimited v. Video Shack*, 700 F.Supp. 127 (S.D.N.Y.1988).

Illustrative of these cases is *DeMent v. Abbott Capital Corp.*, 589 F.Supp. 1378 (N.D.Ill.1984). There, the defendant argued that the plaintiff could not recover lost profits under RICO. *Id.* at 1385. In support of its argument, the defendant cited several cases in which the court had held that a defrauded plaintiff is limited to the recovery of out-of-pocket losses and cannot recover expected profits he might have gained absent the fraud. *Id.* *DeMent* rejected this argument since all of the cases cited by the defendant involved securities fraud laws which evolved as a judicially-created right of action not expressly provided for by Congress. *Id.* Alternatively, *DeMent* examined the plain language of § 1964(c) of RICO and held that "if the 'damages sustained' by a victim of a RICO violation include lost profits, we see no bar in the statute to recovery of those losses. Of course, recovery of lost profits should be subject to the ordinary limitations concerning remoteness (or proximate cause) and speculativeness (or certainty)." 589 F.Supp. at 1385. *Id.*

In support of its claim that lost profits are not recoverable the defendant relies principally on *Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990) and *Heinold v. Perlstein*, 651 F.Supp. 1410 (E.D.Pa.1987). In *Fleischhauer*, investors filed suit pursuant to RICO seeking to recover damages for losses incurred in a film investment program against defendants who participated in marketing and selling film rights to investors. 879 F.2d at 1292–95.

The defendant contended that the jury's treble damages award of $3.9 million could not stand since the plaintiffs had only invested $211,700, yet were awarded nearly six times this amount in damages. *Id.* The plaintiffs, however, argued that the jury intended to compensate them for their lost profits. *Id.* at 1300. The Sixth Circuit rejected the plaintiff's argument and noted that an award of lost profits was not appropriate for two reasons. *Id.* First, the Sixth Circuit noted that the plaintiff failed to show how the defendant's conduct caused the loss profits. *Id.* Specifically, the court noted that although the conduct of the defendant caused the plaintiffs to invest in the films, the defendant did not cause the investments to become less profitable. *Id.* Secondly, the Sixth Circuit found that lost profits could not be awarded since the plaintiffs failed to produce any evidence of the reasonable value of the lost profits. *Id.*

*Fleischhauer* did not hold that lost profits were not recoverable as a matter of law and explicitly stated that "in some cases, expectancy damages may be appropriate." 879 F.2d at 1300. In fact, *Fleischhauer* is actually consistent with the case at hand. Here, the plaintiff alleges that the defendant caused his investments to become less profitable. Specifically, by investing in speculative and high risk investments, which was allegedly prohibited by the Trust Agreement, the plaintiff claims that the defendant caused it to lose profits that would have been earned had the defendant made investments in accordance with the Trust Agreement. Furthermore, in its memo in opposition to the defendant's motion, the plaintiff indicated that it has retained an expert who is in the process of determining the amount of its lost profits. These issues are questions of fact, and, thus, this court cannot now hold that the damages sought are unrecoverable as a matter of law.

---

commissions, margin interest and trading losses. Alternatively, the plaintiff claims that it is entitled to the value of what the plaintiff's investment would have been absent the fraud. This expectation or lost-profit measure of damages focuses on the gain that the plaintiff anticipated from performance by the defendant. *See* Rich-

ard A. Posner, *Economic Analysis of Law* 109 (1986). Regardless of which method of calculation is applied, each demonstrates that there has been damages to the plaintiff's "business or property" which the plaintiff can recover under RICO.

The defendant also cites *Heinold v. Perlstein*, 651 F.Supp. 1410 (E.D.Pa.1987) to support its contention. In *Heinold*, the court refused to award lost profits to a purchaser of a diamond ring who sued a retailer under RICO. *Id.* at 1411. The plaintiff claimed that the defendant violated RICO by representing the ring to be more valuable than what the ring was actually worth. *Id.* However, the plaintiff conceded that the ring was actually more valuable than what the plaintiff had paid. *Id.* The plaintiff sought to recover his expectancy damages, which he defined as the difference between the value that the defendant represented the ring to have and the actual value of the ring. *Id.*

*Heinold* refused to recognize that the plaintiff had proven damages under RICO because the requisite causation did not exist. *Id.* at 1412. Specifically, the court rejected the plaintiff's position since the only property to which the plaintiff alleged an injury was his expectation interest, which would not have existed but for the RICO violation. *Id.* *Heinold* is easily distinguishable from the case at hand. Here, Burg's expectation interest was not created by the defendant's conduct. Certainly, Burg expected to earn a reasonable return on its investment prior to any negotiations between Burg and Frankford and between Frankford and Advest. Therefore, Burg's claim that the defendant caused him to lose profits is viable.

## B. *Standard for Summary Judgment*

Fed.R.Civ.P. 56(c) provides that summary judgment shall be properly granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." An issue is "genuine" only if there is sufficient evidence from which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508, 512 (3d Cir.1994) (quoting *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993)). The court may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If the record thus construed could not lead the trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In moving for summary judgment, the defendant has not demonstrated that, as a matter of law, the plaintiff cannot recover lost profits or expectancy damages under RICO. Furthermore, the defendant has not satisfied its burden of showing that there is no genuine issue of material fact regarding whether its actions caused these damages to the plaintiff or that the damages alleged by the plaintiff are speculative. In fact, the defendant has not offered any evidence to support either of these contentions. Accordingly, this court makes the following:

## RECOMMENDATION

AND NOW, this 12th day of August, 1996, it is respectfully recommended that the Defendant's Motion for Summary Judgment be denied.